Entered on Docket
November 19, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: November 17, 2008**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case<br>) No. 05-31424DM |
| HANFORD NICHOLS LOCKWOOD, JR., | ) |
| Debtor. | ) Chapter 7 |
| JMS LABS LIMITED (U.S.A.), LLC, a<br>New Jersey corporation, | ) Adversary Proceeding<br>) No. 08-3019DM |
| Plaintiff, | ) |
| v. | ) |
| SILVER EAGLE LABS, INC.; HANFORD<br>NICHOLS LOCKWOOD, JR., MICHELE<br>LOCKWOOD, INFINITE FINANCIAL<br>SOLUTIONS, a Nevada corporation,<br>INTEGRATED POWER, a corporation,<br>and DOES 1 through 5, | ) |
| Defendants. | ) |

MEMORANDUM DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Hanford Nichols Lockwood, Jr. ("Lockwood" or "Debtor"), Silver Eagle Labs, Inc. ("Silver Eagle") and Michele Lockwood ("Michele") (collectively, "Defendants") filed a motion for summary judgment on all causes of action asserted against them in the Second Amended Complaint (the "Complaint") filed by plaintiff JMS Labs Limited (U.S.A.), LLC ("JMS"). Following a hearing on the motion on August 18, 2008, the court took the

-1-

matter under submission. For the reasons stated below, the court will grant summary judgment in favor of Michele and Silver Eagle with respect to certain breach of contract claims in the first count and to the contractual interference claims in the third count, will grant summary judgment in favor of Lockwood on the second and third counts, and will deny the balance of the motion for summary judgment as triable issues of fact exist.

**UNDISPUTED FACTS**

In 2002, Lockwood designed and patented an improved nasal dilator system (the "023 Patent"); the application of this patent resulted in a product known as the MaxAir Nasal Dilator ("MaxAir"). Pursuant to a Patent and Know-how Purchase Agreement (the "IP Agreement"), Lockwood licensed use of the 023 Patent to JMS. At that time, Lockwood was the owner of the 023 Patent and the licensor under the IP Agreement.

Pursuant to section 4(a) of the IP Agreement, JMS agreed to pay Lockwood four percent of the net sales price of the nasal dilators sold or leased by JMS. Section 16 of the IP Agreement states that "LOCKWOOD agrees that any patentable or unpatentable improvements on the MaxAir (tm) Nasal Dilators made by him shall be included hereunder as though they had been included in this Agreement when said Agreement was made and entered into, and this without further payment or additional royalty by JMS."

Thereafter, Lockwood applied for a new patent ("the 495 Patent"). JMS contends that the 495 Patent constitutes an improvement of the 023 Patent and is thus part of the property licensed to it under the IP Agreement, while Defendants contend that the 495 Patent is not an improvement of the 023 Patent and is

-2-

therefore not governed by the IP Agreement. On July 9, 2004, Lockwood assigned his interests in the 495 Patent to Silver Eagle.

On May 9, 2005, Lockwood filed a chapter 13 petition and his case was converted to chapter 7 on May 23, 2005; E. Lynn Schoenmann was appointed as the chapter 7 trustee ("Trustee"). On August 19, 2005, JMS filed an adversary proceeding objecting to Lockwood's discharge. This court entered a judgment denying Lockwood's discharge; the Bankruptcy Appellate Panel for the Ninth Circuit affirmed the judgment on August 30, 2007.

On July 8, 2005, the IP Agreement was deemed rejected pursuant to section 365(d)(1),[1] which required Trustee to assume or reject (or obtain an extension to do either) the executory contract within sixty days after the order for relief in order to prevent a deemed rejection. More than one year later, on July 16, 2006, Trustee and JMS filed a joint Motion for Order Authorizing and Approving Transfer of All Assets and Assumption and Assignment of Executory Contract (the "Assignment Motion").

In the Assignment Motion, JMS and Trustee sought approval of a sale whereby JMS would acquire all of the rights of the estate (including its interests in the 023 Patent and its interests as the licensor under the IP Agreement) for $150,000.[2] In other

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23.

[2] At the hearing on the motion for summary judgment, counsel for JMS acknowledged that the $150,000 purchase price would be credited against any amounts owed to it by Lockwood following the denial of his discharge.

-3-

words, upon approval of the sale, JMS would become the owner of the 023 Patent, as well as the licensee and licensor under the IP Agreement. JMS did not intend to continue paying royalty payments contemplated by Section 4(a) of the IP Agreement.

In the Assignment Motion (at page 5, lines 17-20), JMS and Trustee stated that no dispute existed as to adequate assurance of future performance or curing of defaults as "[i]n fact, the Trustee and JMS believe that, upon the assumption and assignment of the IP Agreement, the rights as owner of the Patents and as licensee will merge in JMS." Yet, when JMS presented the order granting the Assignment Motion to the court for signing, it included a clause that stated: "Nothing contained herein shall be deemed to extinguish, by merger (including but not limited to merger of title) or otherwise, any rights that JMS has under the IP Agreement."

In addition, on page 6 of the Assignment Motion, JMS and Trustee stated that with respect to the contract being assumed and assigned, "there are only two parties to the agreement, the Trustee and JMS" and that "the parties are effectively amending and then assuming the agreement, which is authorized procedure." Similarly, at the hearing on the Assignment Motion, JMS agreed with the court that the proposed assumption and assignment was not unlike a novation between JMS and Trustee.

The court entered an order granting the Assignment Motion. Approximately one year later, Defendants filed a motion for reconsideration of that order, arguing that (1) the court erred in allowing the IP Agreement to be assumed and assigned following its deemed rejection, and (2) the court erred in signing an order that

-4-

purported to prevent the invocation of legal defenses or doctrines (specifically, the doctrine of merger) otherwise possibly available to Lockwood as a result of the sale of the 023 Patent and the assignment of the IP Agreement. The Defendants requested this court to strike the language in the order regarding merger, as that relief had not been sought in the Assignment Motion and was inconsistent with the statements made by JMS and Trustee.

The court did not vacate the order authorizing the assumption and assignment of the IP Agreement to JMS, but did strike language in the order purporting to restrict whatever defenses the Defendants may have arising from the deemed rejection or breach of the IP Agreement, as the Defendants were not parties to the assumption and assignment. More importantly, the court struck the language in the order stating that the order did not extinguish by merger or otherwise any rights of JMS in the IP Agreement, as the Assignment Motion did not request such relief and such relief was inconsistent with JMS's prior expression of its belief that the rights as owner of the Patents and as licensee would merge in JMS. In striking the merger language from the order, the court observed that JMS had judicially admitted that merger had occurred, but also noted it was making no determination whether the doctrine of merger would apply.[3]

---

[3] Because JMS inserted language in the order that was contrary to that statement, the court held that JMS was judicially bound and could not circumvent whatever legal defenses were available to Lockwood by crafting a broader and clearly inconsistent order. The court struck the improper language not only to prevent JMS from gaining an advantage inconsistent with its assertions, but also to protect the orderly administration of justice. It acted "to protect against a litigant playing fast and loose with the courts." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)

-5-

Defendants have now filed a motion for summary judgment contending that, among other things, JMS has judicially admitted that Lockwood is no longer a party to the IP Agreement and is no longer required to turn over any improvements to the 023 Patent to JMS.[4] The court will address the contentions of Defendants in the order of the causes of action set forth in the Complaint.

## DISCUSSION

**I.  COUNT ONE: BREACH OF CONTRACT**

  A.  Breach of Contract Claim Against Lockwood

Lockwood contends that, as a matter of law and undisputed fact, he is no longer a party to the IP Agreement and thus cannot be liable for its breach. In particular, Lockwood argues that (1) the court has found, and JMS has judicially admitted, that Lockwood is not a party to the assumed and assigned IP Agreement,

---

(internal quotations and citations omitted).

That said, while JMS judicially admitted that merger may apply and was thus estopped from inserting contradictory language in the order preventing Defendants from asserting that defense, it did not -- despite the court's language -- admit for all purposes that the legal doctrine was applicable. JMS did not admit that merger (as defined by law) had actually occurred, but rather expressed its belief that its interests as licensee, licensor and owner of the patent would merge. In fact, the court clearly identified as an open issue whether the legal defense of merger was applicable, noting that the matter had not been properly presented or briefed. (See footnote 8 to the court's Memorandum Decision dated April 7, 2008).

[4]Defendants focus much of their summary judgment motion on their arguments that JMS judicially admitted that (1) the doctrine of merger applies and (2) Lockwood is no longer a party to the IP Agreement. They do not address the substantive elements of a merger defense (except to state what the consequences of merger are under California real estate law). Therefore, a denial of summary judgment on the judicial admission theory does not resolve the underlying substantive question of whether merger actually applies here.

-6-

(2) JMS waived Lockwood's breaches in seeking approval of the assumption and assignment, and (3) JMS has conceded that the 023 Patent and the license merged, therefore eliminating JMS's rights as licensee under the IP Agreement.

Lockwood's first argument centers on the notion that JMS and Trustee were the only two parties to the Assignment Motion and to the assumed and assigned IP Agreement. Prior to bankruptcy, the two parties to the IP Agreement were Lockwood and JMS. When Lockwood filed bankruptcy, his ownership of the 023 Patent and his rights as a licensor vis-a-vis JMS passed to Trustee. In that respect, the IP Agreement was still a two-party agreement going forward. But nothing relieved Lockwood of his obligations under Section 16 of the IP Agreement, a liability that continues subject to defenses given that his discharge has been denied. Even if the IP Agreement had remained "rejected," that rejection did not terminate the contract. Instead, the rejection acted as a breach by Trustee and Lockwood's chapter 7 estate. See 11 U.S.C. § 365(g) (" . . . the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease . . ."); First Ave. West Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 563 (9th Cir. 2006) (rejection constitutes a breach of contract).[5]

---

[5] The Ninth Circuit explained in Onecast Media that

> [w]hile rejection of a lease prevents the debtor from obtaining future benefits of the lease (such as ongoing possession of leased premises), it does not rescind the lease or defeat any pending claims or defenses that the debtor had in regard to that lease. See 3 COLLIER ON BANKRUPTCY § 365.09[1] (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed. 2005) ("Rejection does not

-7-

Case: 08-03019    Doc# 27    Filed: 11/17/08    Entered: 11/19/08 08:15:38    Page 7 of 20

Because Lockwood's discharge was denied, bankruptcy law (including the executory contract provisions of section 365) did not relieve him of his liability under the IP Agreement;[6] to the extent the IP Agreement is enforceable against Lockwood under state or other law, JMS is not precluded from asserting its breach of contract claim against him. The decisions by JMS and the estate with respect to assumption or rejection of the IP Agreement are not pertinent to Lockwood's non-discharged liability under

---

> . . . affect the parties' substantive rights under the contract or lease, such as the amount owing or a measure of damages for breach and does not waive any defenses to the contract.").

Onecast Media, 439 F.3d at 563.

[6] A chapter 7 discharge discharges a debtor from all prepetition "claims" except for those specified in section 523(a). 11 U.S.C. § 727(b); denial of discharge means that those claims survive. The Bankruptcy Code's definition of "claim" is expansive:

> (5) "claim" means-
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(5). Therefore, JMS's right to an equitable remedy for breach of contract or for damages arising from a breach survived the bankruptcy; the fact that the IP Agreement became property of Debtor's estate (and was assumed, assigned or even rejected by Trustee) does not -- in and of itself -- relieve Lockwood from the consequences of the denial of discharge, nor does it deprive him of defenses otherwise available to him.

-8-

that agreement[7] (except to the extent that JMS expressly waived $150,000 of its prepetition claim against Lockwood and the estate).

Similarly, Defendants also contend that by allowing the estate to assume and assign the IP Agreement, JMS waived all breaches by Lockwood of the IP Agreement (inasmuch as section 365 requires defaults by the debtor or the estate to be cured prior to assumption and assignment). JMS clearly waived the breach arising from Trustee's deemed rejection of the IP Agreement. JMS also clearly and expressly waived $150,000 of its prepetition claim against Debtor and the estate. JMS and Trustee, however, explicitly agreed that "JMS will retain the balance of its claim (i.e., the total amount of the claim less $150,000)." The Sale and Assignment Agreement approved when the Assignment Motion was granted also provided that nothing contained therein "shall constitute a waiver of its rights to enforce, among other things, any pre-petition injunction in favor or [sic] JMS against Debtor (to the full extent any such injunction is non-dischargeable under applicable law). Therefore, this court cannot find as a matter of undisputed fact that by allowing the IP Agreement to be assumed, JMS waived breaches, if any, of the IP Agreement <u>by Lockwood</u>.

Finally, Lockwood asserts that, based on JMS's expression of

---

[7] JMS and Trustee improperly inserted language in the order approving the Assignment Motion purporting to change or negate Lockwood's rights under the IP Agreement, but the court has stricken the inappropriate language. If JMS has breached its obligations to Lockwood or is otherwise not rendering performance contemplated by the IP Agreement, Lockwood may be relieved of his duties under the IP Agreement as well. That is a factual and legal issue not appropriate for summary adjudication, and is not before the court at this time.

-9-

its belief that its interests would merge upon approval of the assumption and assignment agreement, the doctrine of merger precludes JMS's claims under the IP Agreement.[8] For the reasons stated in footnote 3, JMS's prior expression of its belief that its interests would merge estopped it from inserting language purporting to prevent Defendants from asserting the defense of merger; it is not a judicial concession that such a defense would be successful.

In addition, even if JMS's interests as licensee, licensor and owner of the 023 Patent have merged, Lockwood has not demonstrated as a matter of patent or intellectual property law that he could freely use and market improvements, if any, to that patent. In other words, Lockwood has not demonstrated for the purposes of summary judgment that a merger of JMS's interests relieves him of his obligations under section 16 of the IP Agreement. For these reasons, the court will not grant summary judgment dismissing JMS's breach of contract claim against Lockwood.

B. Breach of Contract Claim Against Michele and Silver Eagle

The Complaint refers to breaches of the IP Agreement by the Defendants. JMS acknowledges that Michele is not a party to the IP Agreement (Opposition at 32:6); she therefore cannot be in breach of it. The court will grant summary judgment in favor of Michele on the breach of contract claim.

JMS contends that Silver Eagle became contractually bound by

---

[8] Lockwood has cited no case authority indicating that the doctrine of merger applies to licenses and patents and other intellectual property.

-10-

the IP Agreement when Lockwood assigned his interests in the 495 Patent to it. JMS similarly asserts that it is a third party beneficiary of that assignment. While issues of fact may exist as to whether JMS is a third party beneficiary of the assignment (thus precluding summary judgment), JMS has not demonstrated that Silver Eagle is a party to the IP Agreement. JMS may have a claim against Silver Eagle for infringement of its license or for misappropriation or for interference with contractual relations and rights, but Silver Eagle cannot be liable for breaching a contract to which it is not a party. The court will therefore grant partial summary judgment in favor of Silver Eagle on the breach of contract claim.

**II.     COUNT TWO: MISAPPROPRIATION OF TRADE SECRET**

Defendants contend that the court should grant summary judgment against JMS on its claim for misappropriation of trade secrets because (1) the cause of action is based on IP Agreement to which none of the Defendants are parties; (2) no "trade secret" existed; and (3) the cause of action is barred by statute of limitations. The court is not persuaded by the first two arguments, but agrees that the misappropriation claim against Lockwood is time-barred.

As set forth in the discussion on Count One (breach of contract), the court cannot at this time determine that Lockwood is free of liability under the IP Agreement. Therefore, Defendants' first argument in support of summary judgment on Count Two is not persuasive.

In their second argument, Defendants contend that as a matter of law, the "know-how" and alleged improvements to the 023 Patent

-11-

were not "trade secrets" under California Civil Code section 3426.1(b). The court cannot make such a determination at this juncture since Sections 2 and 9 of the IP Agreement indicate that the "know-how" is protected information not for public disclosure.[9] The know-how and improvements therefore appear to fall within section 3426.1(d)'s definition of a "trade secret": "information, including a formula, pattern, compilation, program, device, method, technique, or process, that . . . [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use [] and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Pro. § 3426.1.

Finally, Defendants argue that the misappropriation claim is time-barred. California Civil Code section 3426.6 provides that a misappropriation action "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Cal. Civ. Code § 3426.6. Defendants contend that JMS knew about the purported misappropriation as early as March 2004, as the patent application for Patent 495 was discussed in a state court arbitration proceeding and mentioned in the arbitration award dated June 2, 2004. In particular, the arbitrators found that the patent application described a design/product that was an improvement of the 023 Patent.

---

[9] These sections provide JMS with an exclusive license to use the 023 Patent and with the right to prevent unauthorized disclosure and use of the know-how.

-12-

JMS did not file its misappropriation claim until July 2007, more than three years after the arbitration and the arbitration award. It should have known about the purported misappropriation then, and the misappropriation action against Lockwood is therefore time-barred under section 3426.6.[10] While JMS contends that it did not discover the alleged misappropriation until February 2005 (when it received a letter from Lockwood's counsel demanding that JMS manufacture and sell the BreatheAide Strip, the product resulting from the 495 Patent), the admissions by JMS's managing member of JMS (Matthew Switsky) in opposition to the motion for summary judgment is not consistent with that contention. Mr. Switzky acknowledges that the parties had stipulated to arbitration the issue of "whether a Breathe-Aide Nasal Strip [i.e., the Patent 495 product] . . . is covered by [the IP Agreement]" and that the arbitrators had determined the issue in its favor.

California Civil Code section 3426.6 states that for its purposes, "a continuing misappropriation constitutes a single claim." Therefore, the first discovered and alleged misappropriation by Lockwood (the submission of the application for the 495 Patent) commenced the limitations period as to the claims against him and any subsequent misappropriations did not extend the bar date. The misappropriation claims against him are time-barred, and the court will enter summary judgment in his favor on this count.

---

[10]JMS has not alleged that the statute of limitations was tolled by Lockwood's bankruptcy with respect to this cause of action (although it did as to Count Three of the Complaint), and the court will not raise that defense on its behalf.

-13-

The court will deny summary judgment with respect to the misappropriation claims against Silver Eagle and Michele. Lockwood assigned his interests in the 495 Patent to Silver Eagle on July 9, 2004; on July 6, 2007, JMS filed its state court action alleging its claim for misappropriation of trade secret. Because JMS could not have discovered Silver Eagle's acquisition of the 495 Patent prior to July 9, 2004, its state court complaint was filed within the limitations period of section 3426.6.

Defendants allege that the assignment to Silver Eagle constituted a "continuing misappropriation" relating back to Lockwood's initial purported misappropriation (and thus barred by section 3426.6), but the California Supreme Court has held that a violation by different defendants may give rise to different accrual dates for trade violation claims, notwithstanding section 3426.6:

> [T]here may be separate claims of continuing misappropriation among different defendants, with differing dates of accrual and types of tortious conduct -- some defendants liable for initial misappropriation of the trade secret, others only for later continuing use. This holding does not conflict with our conclusion that there is only a single UTSA claim against a single defendant misappropriating a single plaintiff's trade secret.

Cadence Design Systems, Inc. v. AvantA Corp., 29 Cal.4th 215, 127 Cal.Rptr.2d 169, 176 (2002). Consequently, any misappropriations by Silver Eagle and Michele were not continuations of Lockwood's initial purported misappropriations for the purposes of California Civil Code section 3426.6. Defendants have not produced undisputed evidence that JMS knew or should have known of misappropriations by Michele or Silver Eagle more than three years

-14-

before they commenced the underlying action.[11]  The court will therefore deny summary as to Count Two with respect to them.

**III. COUNT THREE: INTERFERENCE WITH ECONOMIC RELATIONSHIP**

Defendants argue that the cause of action for interference with contractual relations cannot survive because no contractual relationship now exists between Lockwood and JMS.  For the reasons set forth above in the Count One discussion, triable issues of fact preclude a summary judgment that Lockwood is no longer bound by the IP Agreement.

Defendants also argue that Count Three is barred by the statute of limitations.  The purported breach and misappropriation giving rise to Count Three occurred in 2003 and 2004 (i.e., the application for the 495 Patent and the assignment of 495 Patent to Silver Eagle).  In 2004, the arbitrators found that the technology described in the application for the 495 Patent constituted an improvement of the 023 Patent.  A cause of action for interference with economic relations must be commenced within two years of the alleged interference. Cal. Code Civ. Pro. § 339.  To the extent this cause of action is based on Lockwood's development and use of the technology underlying the 495 Patent and his assignment of that technology and patent to Silver Eagle, the action is time-barred under section 339.  Perhaps recognizing this, JMS initially conceded on page 41 of in its written opposition to the that "any conduct by Silver Eagle Labs will be barred by the Statute of

---

[11] Neither the Complaint nor the Opposition describe how or when Michele misappropriated trade secrets, other than stating that Lockwood transferred his interests in Silver Eagle to Michele in 2004.  To the extent that Michele's liability is derivative to that of Silver Eagle, the misappropriation claim against her is not time-barred.

-15-

Limitations." JMS withdrew this concession at oral argument, but did not set forth any facts establishing a legitimate dispute that the purported interference with JMS's economic interests and exclusive license occurred within two years of the commencement of the underlying action.[12]

**IV.   COUNT FOUR: CONVERSION**

JMS stated on page 41 of its opposition that it will voluntarily dismiss this cause of action.

**V.   COUNT FIVE: FRAUDULENT TRANSFER**

JMS asserts a fraudulent transfer action against Michele and Silver Eagle. California Civil Code sections 3429.04, 3439.05 and 3439.07 permit creditors to file actions to avoid fraudulent transfers made by the debtor after the creditor's claim arose. Generally, absent court approval, only a trustee or debtor-in-

---

[12] The Second Amended Complaint alleges at paragraphs 46-50 that Silver Eagle and Michele interfered with its exclusive license and economic rights under the IP Agreement and that they induced Lockwood to breach the IP Agreement. It did not allege that Lockwood interfered with its rights under the IP Agreement, nor could it, as Lockwood was a party to the IP Agreement and thus would be liable for breach (not inference or inducement to breach). Yet in its opposition to the motion for summary judgment, JMS asserted that Lockwood interfered with JMS's contractual relationships with other parties. This assertion is inconsistent with the Complaint, and JMS has not asserted any facts with respect to the dates and nature of such interferences and contracts. Given that JMS made the same allegations in the arbitration proceeding and in fact was the beneficiary of a finding in 2004 that Lockwood and Silver Eagle had interfered with JMS's relationships with its customers, it appears that claims for interference with third party contracts accrued in 2004 or earlier and still would be barred by California Code of Civil Procedure 339.

In any event, JMS's mere conclusory assertions in its opposition that Defendants interfered with contracts other than the IP Agreement (especially when such assertions were not plead in the Complaint) is insufficient to establish the existence of a disputed material fact on the statute of limitations issue.

-16-

possession has standing to assert fraudulent transfer claims once a petition has been filed. State of California v. PG & E Corp. (In re Pac. Gas & Elec. Co.), 281 B.R. 1, 13 (Bankr. N.D. Cal. 2002). A creditor may, however, pursue such claims upon receiving permission from the court. Id. Furthermore, where a trustee has abandoned (or as here, assigned) such claims and where a debtor's discharge has been denied or a debt to a creditor has been declared nondischargeable, the creditor retains his creditor status and can pursue state law remedies (such as a fraudulent transfer action) in collecting its debt.

Section 3439.09 of the California Civil Code provides the applicable statute of limitations with respect to fraudulent transfers under state law. Under that section, an action to recover an transfer made with actual intent to delay or defraud creditors must be brought within four years after the transfer or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant. An action to recover a transfer made without the receipt of reasonably equivalent value (and while the debtor was insolvent or without sufficient remaining assets) is subject to a four-year statute of limitations from the time the transfer was made or the obligation was incurred. Id.

Here, the purported fraudulent transfers occurred in 2004 and the action was filed in 2007. The action was timely under state law. Defendants, however, contend that JMS is barred from

-17-

pursuing the fraudulent transfer action because of section 546(a)[13] of the Bankruptcy Code, which imposes a two-year statute of limitation on actions commenced pursuant to, <u>inter alia</u>, section 544 and section 548. Section 544 confers "strong-arm" power on a trustee or debtor-in-possession to pursue fraudulent transfer actions that a judgment creditor could assert under state law. JMS is not asserting its fraudulent transfer pursuant to section 544; rather, it is pursuing the claim under its independent state law right to seek avoidance of an actually or constructively fraudulent transfer as a creditor holding a claim that has not been discharged. Therefore, section 546(a) does not apply and the court will deny the motion for summary judgment with respect to Count Five.[14]

### VI. SIXTH, SEVENTH AND EIGHTH CAUSES OF ACTION: CONSPIRACY, SPECIFIC PERFORMANCE, AND INJUNCTIVE/DECLARATORY RELIEF

Because the court is not granting summary judgment on the fraudulent transfer and misappropriation claims against Michele

---

[13] Section 546(a) provides:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--

    (1) the later of--

        (A) 2 years after the entry of the order for relief; or

        (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

    (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

[14] JMS acknowledged on page 43 of its opposition that it is not asserting any claims under section 548.

-18-

and Silver Eagle, it is not dismissing the claim that Defendants conspired to commit these courts. Moreover, as set forth in the discussion of Count One, the court is not entering summary judgment absolving Lockwood of liability under the IP Agreement; triable issues remain. For the same reasons, the court will not enter summary judgment in Defendants' favor on the Counts Seven and Eight for specific performance and injunctive/declaratory relief.

## **CONCLUSION**

Counsel for Defendants should prepare an order consistent with this Memorandum Decision, reciting that the relief is being granted in part and denied in part for the reasons set forth in the decision. When uploading the proposed order, counsel for Defendants should file a certificate of service indicating that it has served opposing counsel in compliance with B.L.R. 9021-1. The order should reflect that the court will hold a status conference in this adversary proceeding on February 12, 2009, at 1:30 p.m.

**END OF MEMORANDUM DECISION**

COURT SERVICE LIST

Lawrence A. Jacobson, Esq.
Sean M. Jacobson, Esq.
Cohen and Jacobson, LLP
900 Ventura Blvd., Ste. 600
Redwood City, CA 94063

Paul F. Kirsch, Esq.
Angus M. Macdonald, Esq.
Priya Sreenivasan, Esq.
Townsend and Townsend and Crew, LLP
Two Embarcadero Center, 8th Fl.
San Francisco, CA 94111

Barry Milgrom, Esq.
Luce, Forward, Hamilton & Scripps LLP
Rincon Centr II
121 Spear St., Ste. 200
San Francisco, CA 94105-1582

Roger R. Rubin, Esq.
1155 Pine St.
San Francisco, CA 94109